IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANA CRISTINA ESCOBAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-06953 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| WALMART INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ana Cristina Escobar was shopping at one of Defendant Walmart Inc.'s ("Walmart") stores when she slipped and fell on a plastic zip tie. Because of the injuries she suffered from her fall, Escobar has brought the present lawsuit alleging that Walmart breached its duty of care to her as a business invitee by not maintaining its premises in a reasonably safe condition. Now, Walmart moves for summary judgment. (Dkt. No. 44.) For the reasons that follow, Walmart's motion is denied.

## BACKGROUND

The following facts regarding the slip-and-fall incident giving rise to this action are undisputed.

On May 18, 2020, Escobar entered a Walmart store located in Bedford Park, Illinois. (Pl.'s Resp. to Def.'s Statement of Facts ("PRDSF") ¶ 5, Dkt. No. 48.) Escobar had been shopping for around ten minutes when she slipped and fell on a zip tie that was on the ground in the toy department. (*Id.* ¶¶ 7–8.) No Walmart employees witnessed Escobar's fall, nor did any employees report seeing a zip tie on the floor prior to the fall. (*Id.* ¶¶ 9, 22.) Approximately six feet away from where Escobar fell was a rack that Walmart used to display bicycles. (Def.'s Resp. to Pl.'s Statement of Additional Facts ("DRPSAF") ¶ 5, Dkt. No. 53.) Walmart's practice

was to attach price tags onto the bike rack, with one price tag for each bike on sale. (*Id.* ¶ 9.) To attach the price tags, a Walmart employee would secure a clear plastic sleeve to the bike rack with a zip tie and then insert a card with price information inside that sleeve. (PRDSF ¶¶ 20, 30–31; DRPSAF ¶ 16; *see also* Def.'s Statement of Material Facts ("DSMF"), Ex. H, Dkt. No. 45-8 (depicting examples of the price tags attached to the bike rack).) The bike rack was one of the few places that Walmart used zip ties, at least for signage purposes. (DRPSAF ¶¶ 12–13.)

As a result of her fall, Escobar filed the present lawsuit in state court, and Walmart subsequently removed it to this Court. In her complaint, Escobar alleges that her slip and fall caused her to suffer a knee injury that required surgery. (Compl. ¶ 12, Dkt. No. 1-1.) She therefore asserts a single claim for premises liability against Walmart.

## DISCUSSION

Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). Here, Walmart seeks summary judgment as to Escobar's only claim—a negligence claim based on premises liability. "In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 664, 649 (7th Cir. 2014). However, Walmart contends that there is insufficient evidence for a reasonable jury to conclude that Walmart breached that duty as to Escobar and it is therefore entitled to summary judgment.

Where, as here, a business invitee is injured by slipping on a foreign substance on the business's premises, liability can be imposed if the plaintiff establishes one of the following: (1) that the substance was placed there through the business's negligence; (2) that the business had

2

actual notice of the substance; or (3) that the business had constructive notice of the substance, meaning that substance was there for a sufficient length of time such that its presence should have been discovered in the business's exercise of ordinary care. *Id.* Escobar argues that Walmart is liable under all three theories.

The Court begins by addressing whether Walmart had either actual or constructive notice of the zip tie on the store's floor. According to Escobar, there is evidence that Walmart's employees actually saw the zip tie on the floor and failed to pick it up. She cites evidence showing that Walmart's employees would walk around the store throughout their shifts and were trained to look out for and pick up items on the floor that posed slipping and tripping hazards. (DRPSAF ¶¶ 23–27.) Moreover, Escobar notes that security video footage shows multiple Walmart employees conducting such safety sweeps in the vicinity of her fall in the hour preceding her accident. (*Id.* ¶¶ 28–35.) But there is no evidence that any Walmart employee actually saw a zip tie on the floor and left it there. Instead, Escobar simply speculates that, because Walmart employees are trained to look out for slip-and-fall hazards, the employees observed walking near the area of Escobar's fall must have seen the zip tie and done nothing. Such speculation cannot support a finding of actual notice. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1089 (7th Cir. 2018) ("Speculation does not defeat summary judgment.").

Escobar's contentions as to Walmart's constructive notice are similarly speculative. "Where constructive knowledge is claimed, of critical importance is whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence should have been discovered." *Zuppardi*, 770 F.3d at 651. There is no evidence from which a jury could reasonably conclude that the zip tie must have been on the ground for a substantial period of time. The view of the area where Escobar fell shown in the video footage is obstructed

3

by shelving, so there is no way of concluding from the video how long the zip tie was on the ground. Escobar claims that because the zip tie was dirty, it must have been on the ground for some period of time. To the extent that a jury did determine that the zip tie was dirty (DSMF, Ex. D, Dkt. No. 45-4 (depicting the zip tie that caused Escobar's fall)), such an observation, by itself, could not support a reasonable inference that the zip tie had been on the ground for an extended period of time.

In arguing that Walmart had constructive notice, Escobar compares the facts here to those in *Heider v. DJG Pizza, Inc.*, 138 N.E.3d 934 (Ill. App. Ct. 2019), which involved a plaintiff who slipped on water near the entrance of a bar. There, the court found a genuine issue of fact as to constructive notice based on the plaintiff's testimony that he had a view of the area of his fall for the 1 hour and 40 minutes he was present at the defendant's bar and "did not see anything that could have caused water to get there, indicating the dampness was there the whole time." *Id.* at 941. Other witnesses corroborated the plaintiff's testimony and also testified that there was no rain on the day of the plaintiff's accident. *Id.* Thus, the court found that a jury could reasonably infer from the evidence "that the water, however it came to be in the entryway of the bar, was there the whole time." *Id.* at 942. Put differently, in *Heider*, the court found that a jury could reasonably infer from the evidence that whatever caused the water to be on the ground had to have occurred more than 1 hour and 40 minutes prior the plaintiff's arrival at the bar, which was sufficient time to give the defendant constructive notice of the hazard. By contrast, here, Escobar had only been inside the Walmart for ten minutes and had not previously walked through or viewed the area where she slipped on the zip tie.

The circumstances of this case more closely resemble those in *Tomczak v. Planetsphere, Inc.*, 735 N.E.2d 662 (Ill. App. Ct. 2000), a case distinguished by the *Heider* court. *Heider*, 138

4

N.E.3d at 941. In *Tomczak*, the plaintiff slipped on a puddle of water at the defendant's ice-skating rink. *Tomczak*, 735 N.E.2d at 664. The plaintiff testified that she made several trips around the rink without seeing water and was unaware how long the water had been there. *Id.* at 664, 667–68. Because there was "no evidence that anyone else . . . knew how long th[e] puddle of water was present," the *Tomczak* court held that "liability cannot be imposed upon the [defendant] for the presence of a substance that no one had knowledge of immediately prior to the occurrence." *Id.* at 668. As in *Tomczak*, here, there is no probative evidence reflecting how long the zip tie had been on the ground. And "[a]bsent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice." *Zuppardi*, 770 F.3d at 651 (internal quotation marks omitted). The Court therefore finds nothing in the record that creates a genuine factual issue regarding Walmart's constructive or actual notice.

Absent evidence of actual or constructive notice, Escobar can only hold Walmart liable if the zip tie was on the floor because of Walmart's negligence. To create a triable issue of fact as to Walmart's responsibility for creating the slip-and-fall hazard, Escobar must come forward with evidence that

> (1) show[s] that the foreign substance was related to [Walmart's] business and (2) "offer some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of [Walmart], from which it could be inferred that it was more likely that [Walmart] or [its] servants, rather than a customer, dropped the substance on the premises."

*Zuppardi*, 770 F.3d at 649–50 (quoting *Donohod v. O'Connell's, Inc.*, 148 N.E.2d 434, 441 (Ill. 1958)). There is no dispute that Walmart used zip ties to affix price tags to the bike rack and that Escobar slipped on a zip tie only about six feet away from the bike rack. Certainly, the fortuity of Escobar slipping on a zip tie a short distance away from one of the few places in the store where

zip ties are regularly used strongly suggests the existence of a jury issue. Nonetheless, Walmart contends that the evidence forecloses the possibility that the particular zip tie that caused Escobar's fall was one of the zip ties that Walmart used to hang price tags on the bike rack.

      Walmart contends that there are stark differences between the color and width of the zip tie involved in Escobar's fall and the zip ties used on the bike rack. Based on its comparison of photographs of the zip tie from the accident and exemplar photographs of the bike-rack zip ties (*compare* DSMF, Ex. D, *with* DSMF, Ex. H), the Court cannot to exclude the possibility that Escobar fell on one of the store's zip ties. While Walmart contrasts the white zip tie involved in Escobar's fall with the clear or black zip ties typically used on the bike rack (PRDSF ¶¶ 21, 31, 33), it is not obvious from the photographs that the zip tie from the fall is a different color than the supposedly clear bike-rack zip ties. Further, the Court is unable to discern from the photographs an appreciable difference in width between the bike-rack zip ties and the zip tie from the fall. In addition to the photographic evidence, Walmart cites deposition testimony from its employees in which they state that the zip tie from Escobar's fall does not match the zip ties used by the store. (PRDSF ¶¶ 19, 25, 30, 34.) Yet the employees only testify as to their subjective perceptions. Notably absent from the record is any evidence of whether Walmart used a particular brand of zip ties, or some other evidence that would allow for a more objective comparison of the characteristics of Walmart's zip ties with the zip tie from the accident.

      On the other hand, there is evidence tending to suggest that the zip tie on the floor was not Walmart's zip tie. The zip tie that caused Escobar's fall had a wide loop and a long tail. (PRDSF ¶¶ 17, 26–27, 30, 32.) Its loop had also been cut open with a sharp, straight edge (DRPSAF ¶ 14), which suggests that it had been previously used. By contrast, the zip ties that Walmart used for the bike price tags were tightly fitted to the bike rack, and thus have a smaller

loop, and the tail were clipped off. (PRDSF ¶¶ 26, 31; *see also* DSMF, Ex. H.) Moreover, two Walmart employees testified that the zip ties on the bike rack were rarely removed because they were attached to the plastic sleeve. (PRDSF ¶¶ 20, 29.) Thus, if Walmart needed to change out the price tag, it would simply remove the old tag from the plastic sleeve and insert the new one. (*Id.*) But while such evidence may tend to suggest that the zip tie from Escobar's fall was not one of Walmart's zip ties, at best it demonstrates a triable issue of fact. The evidence is not so definitive as to preclude a reasonable jury from concluding otherwise.

    In short, the Court finds that the evidence showing that Escobar slipped on a zip tie in close proximity to a bike rack where zip ties were regularly used in the course Walmart's business creates a triable issue of fact that must be submitted to a jury. Consequently, Walmart is not entitled to summary judgment as to Escobar's premises liability claim.

## CONCLUSION

    For the foregoing reasons, Walmart's motion for summary judgment (Dkt. No. 44) is denied.

ENTERED:

Dated: April 6, 2023

_____
Andrea R. Wood
United States District Judge